**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**


**CONTRACTORS BONDING AND INSURANCE COMPANY,**
**an Illinois corporation,**


                        **Plaintiff,**


  **v.**                                   **Civil Action No.: _____**

**JCB CONSTRUCTION CO., INC.**
**a Virginia corporation,**

        **SERVE:**      **Janice Pickrell Anderson**
                         **Registered Agent**
                         **Kellam, Pickrell, Cox & Anderson, P.C.**
                         **403 Boush St., Suite 300**
                         **Norfolk, VA  23510**
                         **(City of Norfolk)**

**TERESA L. BREAKFIELD,**
**a/k/a TERESA L. VESTAL-BREAKFIELD,**
**a/k/a TERESA L. VESTAL,**
**a/k/a TERESA L. HUFTON,**

        **SERVE:**      **506 E. Glen Haven Drive**
                         **Suffolk, VA  23437**
                         **(City of Suffolk)**

**JAMES BREAKFIELD,**

        **SERVE:**      **504 E. Glen Haven Drive**
                         **Suffolk, VA  23437**
                         **(City of Suffolk)**

  **and**

**LINDA L. BREAKFIELD,**

        **SERVE:**      **504 E. Glen Haven Drive**
                         **Suffolk, VA  23437**
                         **(City of Suffolk)**

                         **Defendants.**

## COMPLAINT FOR INDEMNITY AND QUIA TIMET RELIEF

The plaintiff, Contractors Bonding and Insurance Company, by counsel, in accordance with Rule 3 of the *Federal Rules of Civil Procedure*, states the following as its Complaint against defendants JCB Construction Co., Inc., Teresa L. Breakfield a/k/a Teresa L. Breakfield-Vestal a/k/a Teresa L. Vestal a/k/a Teresa L. Hufton, James Breakfield and Linda L. Breakfield.

### THE PARTIES

1.      Contractors Bonding and Insurance Company ("CBIC") is a corporation duly organized and existing under the laws of the State of Illinois, where it also maintains its principal place of business.  CBIC is duly authorized to engage in the surety business in the Commonwealth of Virginia and serves as a contract bond surety for JCB Construction Co., Inc.

2.      Defendant JCB Construction Co., Inc. ("JCB") is and was, at all times pertinent to this proceeding, a corporation organized and existing under the laws of the Commonwealth of Virginia, where it also maintains its principal place of business.  JCB is a sewer and utility contractor.

3.      Individual defendant Teresa L. Breakfield a/k/a Teresa L. Breakfield-Vestal a/k/a Teresa L. Vestal a/k/a Teresa L. Hufton ("Teresa Breakfield"), is and was at all times pertinent to this proceeding an individual citizen of the Commonwealth of Virginia who resides at 506 E. Glen Haven Drive, Suffolk, Virginia 23437.  At all times pertinent to this proceeding, Teresa Breakfield served as the president of JCB, and was and continues to serve as a personal indemnitor of CBIC.

4.      Individual defendant James Breakfield is and was at all times pertinent to this proceeding an individual citizen of the Commonwealth of Virginia who resides at 504 E. Glen Haven Drive, Suffolk, Virginia 23437.  Until May 13, 2020, James Breakfield served as the CEO

and secretary of JCB, and was and continues to serve as a personal indemnitor of CBIC.

5.    Individual defendant Linda L. Breakfield is and was at all times pertinent to this proceeding an individual citizen of the Commonwealth of Virginia who resides at 504 E. Glen Haven Drive, Suffolk, Virginia 23437.  Linda Breakfield served as the treasurer and vice president of JCB until May 13, 2020, when she became the secretary and treasurer, and was and continues to serve as a personal indemnitor of CBIC.

### JURISDICTION AND VENUE

6.    This Court has diversity jurisdiction under 28 U.S.C. § 1332 because (1) CBIC is a citizen of the State of Illinois, (2) defendant JCB is a citizen of the Commonwealth of Virginia because it is a Virginia corporation which maintains its principal place of business in Virginia, and (3) the individual defendants Teresa Breakfield, James Breakfield and Linda L. Breakfield are citizens of the Commonwealth of Virginia.  The amount in controversy exceeds $75,000, exclusive of costs and interest.

7.    Venue in this Court is proper as it is specifically conferred by the provisions of 28 U.S.C. § 1391 as JCB is doing business in, Teresa Breakfield, James Breakfield and Linda L. Breakfield reside in, and a substantial part of the events, acts and/or omissions giving rise to the claims raised by this Complaint occurred and continue to occur within this district and division.

### STATEMENT OF FACTS

8.    In this Complaint, CBIC seeks to enforce its unconditional rights as surety under an indemnity agreement, and to compel the specific performance of the respective contractual obligations of JCB, Teresa Breakfield, James Breakfield and Linda L. Breakfield to, among other things and upon demand, indemnify, keep indemnified and save CBIC harmless by (a) immediately reimbursing it for any and all losses, and (b) depositing with CBIC cash or other property acceptable

to CBIC, as collateral security, sufficient to protect CBIC with respect to any claims or potential claims as well as any expenses or attorneys' fees, all in relation to a number of contract payment and performance bonds it issued, as surety, in connection with the construction of three public projects in the Cities of Chesapeake and Norfolk, Virginia.

9.      On or about November 10, 2012, JCB, as principal and corporate indemnitor, and Teresa Breakfield, James Breakfield and Linda L. Breakfield, in their individual capacities as personal indemnitors (JCB, Teresa Breakfield, James Breakfield, and Linda L. Breakfield are sometimes collectively referred to as the "Indemnitors") entered into a written General Indemnity Agreement ("GIA"), a true and accurate copy of which is attached as Exhibit 1 and is incorporated by reference as if specifically set forth in this Complaint.

10.     Under the terms and conditions of the GIA the Indemnitors promised to indemnify, keep indemnified, and save harmless CBIC from and against any and all demands, liabilities, loss, costs, penalties, obligations, interest, damages or expenses of whatever nature or kind, as well as fees of attorneys and all other expenses, including but not limited to costs and fees incurred in investigation of claims or potential claims, adjustment of claims, enforcing the GIA, attempting to recover losses or expenses from the Indemnitors whether CBIC shall have paid out any such sums or any part thereof, or procuring or attempting to procure the discharge of any surety bonds executed on behalf of JCB.  (GIA, Ex. 1, Art. II, p. 1).

11.     Additionally, Article V of the GIA, entitled "Collateral Security," states in relevant part:

> If a claim or demand for performance of any obligation under any Bond is made against [CBIC]…upon demand from [CBIC]…the undersigned shall deposit with [CBIC] cash or other property acceptable to [CBIC], as collateral security, in sufficient amount to protect [CBIC] with respect to such claim(s) or potential claims and any expense or attorneys' fees….In the event that suit is necessary to enforce this paragraph, the undersigned

shall supply to [CBIC] a list of the undersigneds' assets and the assets of Principal and any Affiliate, indicating the address of the assets and the person(s) having custody.  [CBIC] may insist on cash security….Specific performance of this paragraph shall be a remedy available to [CBIC].  All post-judgment procedures for executing on judgments will be available to enforce [CBIC's] decree of specific performance, in addition to all prejudgment procedures available by law.  Collateral may be held by [CBIC] until it has received evidence of its complete discharge from any and all such claims or potential claims even if said claims are made against [CBIC] after collateral is deposited or are made against a different Bond, and until [CBIC] has been fully reimbursed for all loss, expenses and attorneys' fees.  All expense of [CBIC], including attorneys' fees, in connection with taking, administering, realizing upon or releasing collateral, whether deposited under this paragraph or as a requirement prior to execution of any Bond, shall be covered by the indemnity hereunder.

(GIA, Ex. 1, Art. V, p. 2).

12.   In addition to the obligation to provide collateral, the Indemnitors are obligated to provide CBIC with free access to all of their books, records and accounts.  Article IX, ¶ H of the GIA, entitled "General Provisions," states in pertinent part that:

At any time and until such time as [CBIC] has been furnished with conclusive evidence that its liability under any Bond is terminated and/or until such time as [CBIC] has been indemnified as provided in paragraph 11 above, [CBIC] shall have the right to free access to all of the books, records, and accounts of the undersigned for the purpose of examining them and copying them.  Time is of the essence, and [CBIC] shall have such right of free access at any time of day and any day of the week.

(GIA, Ex. 1, Art. IX, p. 2).

13.   Article III of the GIA, entitled "Default," states that JCB shall be in default with respect to a bonded contract and the GIA upon the occurrence of any of the following events, among others:

\*\*\*

C.   Principal fails to pay for any labor, equipment, materials, taxes, contributions or other services or obligations when such payment is due.

\*\*\*
> E.  Principal, or any one of the undersigned, breaches any provision of this agreement.

\*\*\*
> L.  Any claim is made against any Bond.  Surety shall have the right in its sole discretion to determine when a demand, notice, request, or other communication regarding a Bond constitutes a claim against the Bond.

(GIA, Ex. 1, Art. III, p. 1).

14.      In reliance upon the GIA, and the promises of the Indemnitors to indemnify and save it harmless for any and all losses, CBIC considered and approved the requests of JCB for the issuance of contract payment and performance bonds on a number of public construction projects in the Cities of Chesapeake and Norfolk, Virginia.  In each instance, and in accordance with the terms and conditions of the various contracts it had been awarded, JCB furnished to the appropriate municipal entity its contract payment and performance bonds for each of the respective projects. The bonds were issued by CBIC, as surety, naming JCB as its principal and co-obligor, and the appropriate municipal entity as its obligee.  Each of the performance bonds was issued to secure JCB's performance of its obligations to the obligee under the contract for which it was issued, and each of the payment bonds was issued for the protection of all persons, firms, subcontractors, and corporations furnishing materials for or performing labor in the prosecution of the work in connection with the construction of the project for which it was issued.  The projects for which contract bonds were issued include the following:

A.  Cloverdale Phase II Drainage Improvements, C#14-1012-06, IFB 91081

Obligee:      City of Chesapeake, Virginia
Bond Nos.:    RCB0006042
Bond Date:    May 22, 2018
Amount:       $ 1,646,637

B.   Drainage Maintenance – Indefinite Quantity Contract No. 26455

    Obligee:       City of Norfolk, Virginia
    Bond Nos.:   RCB0006034
    Bond Date:   June 16, 2019
    Amount:     $ 950,000

C.  Drainage Facility Maintenance – Indefinite Quantity Contract, 3rd Ext.

    Obligee:       City of Norfolk, Virginia
    Bond Nos.:   CSB0013697
    Bond Date:   June 20, 2018
    Amount:     $ 1,255,000

Copies of the contract payment and performance bonds Nos. RCB0006042, RCB0006034, and CSB0013697 are attached as Exhibits 2A, 2B, and 2C, respectively.

15.   In connection with the performance of its obligations under the various contracts referred to in ¶ 14 above, JCB entered into various subcontracts and/or purchase orders with subcontractors, materialmen, laborers, service providers and/or rental equipment providers. Notwithstanding its contractual obligations to its subcontractors, materialmen, laborers, service and/or rental equipment providers, JCB refused or failed to pay some of them for the labor, materials, services and/or rental equipment they furnished in connection with the work on the various projects.

16.   CBIC received a claim from Branscome, Inc. ("Branscome") under the payment bond which it issued on behalf of JCB with respect to the Cloverdale Phase II Drainage Improvements Project (Bond No. RCB0006042).  CBIC presented the Branscome payment bond claim to the Indemnitors so that they could discharge the obligation.  The Indemnitors failed to discharge or provide an adequate basis upon which to defend the claim.  Due to this failure and because it faced mounting exposure for Branscome's attorneys' fees, costs and expenses, all of which were part of the claim, CBIC negotiated a settlement with Branscome in the amount of

$143,391.10. True and accurate copies of the June 25, 2020 Settlement and Release Agreement between CBIC and Branscome and CBIC's settlement check payable to Branscome are attached hereto as Exhibits 3A and 3B, respectively.

17. Including the Branscome claim, based upon a list of accounts payable which JCB has provided to CBIC, it appears that as of May 8, 2020, JCB had at least $354,839.12 in outstanding accounts payable on all projects on which JCB was working. JCB has advised, but CBIC has not been able to verify, that not counting the Branscome claim, approximately $100,000 of the outstanding accounts payable related to projects on which CBIC had issued bonds. Accordingly, and following the settlement of the Branscome claim, CBIC now expects losses on the payment bonds it issued at the request of the Indemnitors in *at least* the amount of $243,391.10.

18. CBIC has also been in contact with the City of Chesapeake, the obligee with respect to the Cloverdale Phase II Drainage Improvements Project (Bond No. RCB0006042). The City has alleged, but CBIC has not been able to confirm, that (1) resurfacing work in an estimated amount in excess of $100,000 remains incomplete after certain corrective work was performed on the gravity sewer; (2) contractual Substantial Completion was due on June 4, 2019, but not accomplished until December 16, 2019; (3) final completion was due on July 4, 2019, but not yet accomplished as of July 14, 2020; and (4) liquidated damages for delayed Substantial Completion and Final Completion have accrued and, in the case of Final Completion, are still accruing. While no formal claim has been asserted by the City, CBIC accordingly anticipates additional exposure on the performance bond for the Cloverdale Phase II Drainage Improvements Project performance bond in at least the amount of $576,500.

19. Under the terms and conditions of the GIA, the Indemnitors are obligated to

indemnify and save CBIC harmless from and against any and all liabilities, losses, damages, charges, expenses, costs and attorneys' fees as the result of the issuance of the contract bonds on behalf of JCB.

20.     As a result of the developments set forth above and based upon the information then available to it, and in accordance with the terms and conditions of the GIA, CBIC on May 20, 2020, by its counsel, asserted its demand that the Indemnitors provide collateral in the amount of $300,000. A true and accurate copy of the copy of the May 20, 2020 letter from CBIC's counsel to the Indemnitors' counsel asserting the collateral demand is attached as Exhibit 4 and is incorporated by reference as if fully set forth in this Complaint.

21.     In response to the May 20, 2020 letter from CBIC's counsel, the Indemnitors refused to provide the requested collateral.

22.     By letter dated July 22, 2020 the City of Chesapeake has advised the Indemnitors' counsel that, as of July 8, 2020, liquidated damages in the amount of $476,500 have accrued and continue to accrue.  A true and accurate copy of the July 22, 2020 letter from the City to the Indemnitors' counsel is attached as Exhibit 5.  As a result of the City's anticipated position, CBIC's counsel by letter dated July 23, 2020, asserted its demand for collateral in the amount of $751,500.  A true and accurate copy of the July 23, 2020 letter is attached as Exhibit 6 and is incorporated by reference as if specifically set forth in this paragraph.

23.     In an effort to investigate and assess its ongoing exposure under the various bonds, CBIC has also requested access to the Indemnitors' books, records and accounts on a number of occasions, both orally and in writing.  Other than a few select documents which they chose to share, they have refused to grant CBIC access to their books, records and accounts. Copies of (a) a letter dated April 30, 2020 from Ryan Issel, CBIC's claim representative, to each

of the Indemnitors, (b) an email dated May 12, 2020 from CBIC's counsel to the Indemnitors' counsel, (c)  a letter dated May 20, 2020 from CBIC's counsel to the Indemnitors' counsel, and (d) an email dated May 29, 2020 from CBIC's counsel to the Indemnitors' counsel are attached as Exhibits 7A, 7B, 7C and 7D, respectively.

24.     By (a) failing to pay for labor and materials provided by its subcontractors and/or suppliers, (b) refusing to provide collateral to CBIC, (c) allowing a claim to be made on Payment Bond No. RCB0006042, (d) causing CBIC to incur ongoing potential exposure on Performance Bond No. RCB0006042, and (e) refusing to grant CBIC access to the Indemnitors' books, records and accounts, the Indemnitors are in default and breach of the GIA.

25.     In an April 30, 2020 letter to Branscome, JCB advised that it was in the process of closing its doors and selling off its assets.  Accordingly, JCB appears to be financially incapable of completing the work required under the various contracts and is either insolvent or becoming insolvent, and the Indemnitors appear to be dissipating their assets.  A true and accurate copy of the April 30, 2020 letter is attached hereto as Exhibit 8.

26.     CBIC has called upon JCB, Teresa Breakfield, James Breakfield and Linda L. Breakfield to specifically perform and fulfill their contractual obligations to provide CBIC with access to their books, records and accounts, and to indemnify and save it harmless in accordance with the terms and conditions of the GIA.

27.     Notwithstanding CBIC's demands, and their contractual obligations to honor those demands under the terms and conditions of the GIA, JCB, Teresa Breakfield, James Breakfield and Linda L. Breakfield have wholly failed and otherwise refused to provide the collateral required by CBIC's collateral demand, provide CBIC with access to their books, records and accounts, and to otherwise indemnify and save CBIC harmless by procuring the

discharge of the various bonds.

28.     Under the terms and conditions of the GIA, CBIC is entitled (a) to be fully indemnified by JCB, Teresa Breakfield, James Breakfield and Linda L. Breakfield, and (b) to enforce those obligations and immediately compel the specific performance of those obligations.

29.     As a result of its issuance of the various contract bonds to which reference is made above, and the failure and refusal of JCB, Teresa Breakfield, James Breakfield and Linda L. Breakfield to fulfill their obligations under the GIA, CBIC has sustained and continues to incur significant damages for which the Indemnitors are jointly and severally liable.

**COUNT I**
**SPECIFIC PERFORMANCE**

30.     CBIC restates and incorporates the allegations as set forth in ¶¶ 1 through 29 above as if specifically set forth in this paragraph.

31     CBIC, in reliance upon the execution of the GIA by JCB, Teresa Breakfield, James Breakfield and Linda L. Breakfield, issued its contract payment and performance bonds on the three construction projects naming JCB as its principal, has been presented with a claim under one of its payment bonds, and faces significant exposure under both its payment and performance bonds, and has and will continue to incur losses and consultants' and attorneys' fees, costs and expenses by virtue of the issuance of the bonds.

32.     JCB, Teresa Breakfield, James Breakfield and Linda L. Breakfield agreed to indemnify and save CBIC harmless, upon demand, by among other things, collateralizing their indemnity obligations.  They also agreed to provide CBIC with free access to their books, records and accounts.

33.     Notwithstanding CBIC's demands, JCB, Teresa Breakfield, James Breakfield and Linda L. Breakfield have failed to discharge all of the liabilities under the various bonds,

collateralize their indemnity obligations, provide CBIC with free access to their books, records and accounts, and/or otherwise perform their obligations under the GIA.

34.     The Indemnitors' actions and failures to act constitute a default under the GIA and a breach of contract, which breaches are material in nature and are subjecting CBIC to significant exposure and other losses.

35.     As a result of their failure to perform, for which there is no adequate remedy at law, CBIC is entitled to the entry of an order compelling the Indemnitors to immediately and specifically perform their obligations under the express terms and conditions of the GIA by  (a) providing collateral in a sufficient amount to protect CBIC with respect to all outstanding or potential claims against its bonds, and to satisfy all consultants' and attorneys' fees, costs and expenses, (b) providing CBIC with free access to their books, records and accounts, and (c) completely discharging the liabilities for which CBIC is responsible under the bonds.

WHEREFORE, CBIC requests the entry of an order compelling JCB, Teresa Breakfield, James Breakfield and Linda L. Breakfield, jointly and severally, to immediately and specifically perform their obligations under the GIA by furnishing collateral and/or an irrevocable letter of credit in the amount of at least $751,500 or as the evidence may establish.

## COUNT II
## QUIA TIMET AND INJUNCTIVE RELIEF

36.     CBIC restates and incorporates the allegations as set forth in ¶¶ 1 through 35 above as if specifically set forth in this paragraph.

37.     As of the filing of this Complaint, CBIC (a) has been presented with and satisfied a payment bond claim presented by Branscome on Bond No. RCB0006042, (b) faces significant exposure under the various performance and payment bonds, (c) has not received adequate assurances from the Indemnitors as to the actual status of all the bonded projects, (d) has not

received any collateral, and (e) has not been given free access to their books, records and accounts, all as required by the terms and conditions of the GIA.

38.     CBIC justifiably fears it will sustain significant losses and irreparable harm as a result of its issuance of the contract bonds. CBIC anticipates that it may sustain losses of at least $751,500 in the form of payment bond claims, performance bond claims, consultants' and attorneys' fees, costs and expenses, over and above the $143,391.10 which it has already paid to resolve the payment bond claim asserted by Branscome.

39.     In accordance with the terms and conditions of the GIA, and the equitable doctrines of exoneration and *quia timet*, CBIC is entitled to have the Indemnitors, jointly and severally, place it immediately in funds sufficient to cover the losses it has sustained and the losses it anticipates by virtue of its issuance of the contract payment and performance bonds.

40.     Unless the assets of all of JCB, Teresa Breakfield, James Breakfield and Linda L. Breakfield are marshaled, accounted for and preserved, and their indemnity obligations to CBIC are collateralized and CBIC is placed in funds or otherwise secured, CBIC's obligations under the contract bonds, and its right of indemnification under the GIA and the law will not be adequately secured.

41.     CBIC is entitled to be placed in funds in the amount of $751,500 or as the evidence may otherwise establish, and to be fully collateralized by the Indemnitors immediately and prior to making any further payments in discharge of its bond obligations.

42.     CBIC is without a plain, speedy or adequate remedy at law which will serve to immediately indemnify and save it harmless for its losses and probable liabilities, and will be irreparably and permanently injured unless this Court grants immediate injunctive and equitable relief. Further, unless injunctive and *quia timet* relief are granted immediately, CBIC is fearful

that the Indemnitors are likely to sell, transfer, dispose of, lien, secure or otherwise divert or encumber their assets from being used to discharge their obligations to exonerate and indemnify CBIC, all to CBIC's irreparable harm.

43.     CBIC has been forced to retain legal counsel and incur other expenses and costs in pursuit of its rightful interests in this matter, and is entitled to be indemnified and saved harmless in accordance with the terms and conditions of the GIA and the law.

WHEREFORE, CBIC requests the entry of an order (1) awarding judgment in its favor, and (2) granting mandatory and prohibitory injunctive relief against JCB, Teresa Breakfield, James Breakfield and Linda L. Breakfield,, jointly and severally, and as their interests appear, as follows:

A.     Directing JCB, Teresa Breakfield, James Breakfield and Linda L. Breakfield, and their executors, administrators, distributees, successors and assigns, or anyone acting in concert with them or on their behalf to:

1.     Immediately place CBIC in funds in at least the amount of $751,500 by money, property, liens or other security interests in property, as determined by CBIC, to collateralize and serve as ample security for its obligations under the payment and performance bonds, and rights of indemnification and to be saved harmless under the GIA;

2.     Render to CBIC an immediate, full and complete accounting of any and all assets owned by them or in which they have had any interest since November 10, 2012, and the disposition of the same, to the extent they have not been previously disclosed;

3.     Allow CBIC and/or their representatives immediate, full and complete access to all business, financial, and construction-related records, books, and accounts which are maintained by them or on their behalf, to the extent such access has not already been provided;

4.     Indemnify and save CBIC harmless for any and all liabilities, losses and expenses, including consultants' and attorneys' fees, which have been and/or may be incurred by CBIC as a result of CBIC having executed bonds for JCB;

B.      Permanently enjoining and restraining JCB, Teresa Breakfield, James Breakfield and Linda L. Breakfield, and their officers, directors, employees, executors, administrators, distributees, successors and assigns, or anyone acting in concert with them or on their behalf, from:

1.      Selling, transferring or otherwise disposing of or encumbering their assets and property in any manner, form or shape whatsoever;

2.      Allowing their assets and property to be liened or otherwise encumbered, unless and until CBIC shall be placed in funds or otherwise secured as required by the GIA;

C.      Granting a lien upon all of the corporate and personal assets and property of JCB, Teresa Breakfield, James Breakfield and Linda L. Breakfield,, and their executors, administrators, distributees, successors and assigns, or anyone acting in concert with them or on their behalf, including all real and personal property, which they may own or in which they have an interest, either individually or jointly, for the purpose of securing CBIC against any and all losses that it may sustain or incur by virtue of having executed payment and performance bonds for JCB, and to remain in effect unless and until CBIC shall be placed in funds or otherwise secured as required by the CBIC; and

D.      Awarding such further relief as the Court deems just.

## COUNT III
## BREACH OF CONTRACT

44.     CBIC restates and incorporates the allegations as set forth in ¶¶ 1 through 43 above as if specifically set forth in this paragraph.

45.     Under the terms and conditions of the November 10, 2012 GIA, the Indemnitors are obligated to comply with all of the terms and conditions of the GIA, and to indemnify and save CBIC harmless from and against any and all liabilities, losses, damages, costs, charges,

expenses, and consultants' and attorneys' fees incurred as a result of the issuance of any bond on behalf of JCB.

46.     As a result of the receipt and satisfaction of at least one claim, and CBIC's issuance of the various payment and performance bonds on behalf of JCB, CBIC (a) has incurred and anticipates losses under its various payment and performance bonds, and (b) has incurred and expects to incur additional consultants' and attorneys' fees, costs, and expenses.

47.     The Indemnitors' failure and/or refusal to indemnify and save CBIC harmless, and their refusal to provide free access to their books, records and accounts, constitutes a default and material breaches of contract, the direct and natural result of which has caused CBIC to sustain significant damages.

WHEREFORE, CBIC seeks judgment against JCB, Teresa Breakfield, James Breakfield and Linda L. Breakfield, jointly and severally, in the principal amount of $894,891.10, a figure which includes the $143,391.10 CBIC has already paid to Branscome and the $751,500 collateral demand, or those sums which the evidence may otherwise establish, plus all interest at the pre-judgment rate on each payment, costs, expenses, and consultants' and attorneys' fees, as well as post-judgment interest on the entire sum until paid, all as provided by the terms and conditions of the GIA.

## COUNT IV
## BREACH OF FIDUCIARY DUTY

48.     CBIC restates and incorporates the allegations as set forth in ¶¶ 1 through 47 above as if specifically set forth in this paragraph.

49.     Article VI of the GIA, entitled "Trust Funds," states:

> The undersigned agree and hereby expressly declare that all funds due or to become due to [JCB] or its successors or assigns under any Contract covered by a Bond are trust funds, whether in the possession of [JCB] or

> another, for the benefit and payment of all persons to whom [JCB] incurs obligations in the performance of such Contract and for which [CBIC] would be liable under the Bond.   If [CBIC] discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds.

(GIA, Ex. 1, Art. VI, p. 2).

50.     Under the terms and conditions of the GIA and its trust fund provision, JCB, Teresa Breakfield, James Breakfield and Linda L. Breakfield owe a fiduciary duty to CBIC to preserve the integrity of the contract funds for each contract, and to apply them solely for the payment of JCB's payment obligations to its subcontractors, materialmen, laborers, service providers and/or rental equipment providers on each of the applicable contracts, and for the performance of the obligations of JCB and/or CBIC under the contracts and/or bonds.

51.     Additionally, Teresa Breakfield, James Breakfield, and Linda L. Breakfield, as officers of JCB, had a fiduciary duty to protect the interests of JCB's creditors when it became known that JCB was insolvent or becoming insolvent.

52.     If and to the extent the Indemnitors have failed to fulfill their fiduciary duties and the various contract funds have been used for purposes other than their intended purpose, or the funds are being or have been commingled, then JCB, Teresa Breakfield, James Breakfield and Linda L. Breakfield have breached their fiduciary duties, which breaches are material in nature and have caused damage to CBIC.

WHEREFORE, CBIC seeks judgment against JCB, Teresa Breakfield, James Breakfield and Linda L. Breakfield, jointly and severally, in the principal amount of $894,891.10, or those sums which the evidence may otherwise establish, plus all interest at the pre-judgment rate on each payment, and its consultants' and its attorneys' fees, costs and expenses, as well as post-judgment interest on the entire sum until paid, all as provided by the terms and conditions of the

GIA.

Respectfully submitted,

**CONTRACTORS BONDING AND
INSURANCE COMPANY**

By Counsel

/s/ Thomas J. Moran
Richard T. Pledger (VSB No. 28192)
Thomas J. Moran (VSB No. 71296)
WRIGHT, CONSTABLE & SKEEN, LLP
301 Concourse Boulevard, Suite 120
West Shore III
Glen Allen, VA  23059
Telephone:     (804) 362-9434
Facsimile:     (804) 441-9250
email:          rpledger@wcslaw.com
                tmoran@wcslaw.com